STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

DONALD R. MARTIN,



                           Plaintiff,

         -VS-                                   5:17 -CV- 756 (TJM/ATB)

COUNTY OF ONONDAGA,
MATHEW CAREY DEPUTY SHERIFF;
COSTELLO, DEPUTY SHERIFF;
KLASEN, DEPUTY SHERIFF,

                          Defendants.
-----------------------------------------------------------X

**BRIEF IN OPPOSITION TO DEFENDANTS' SUMMARY JUDGMENT MOTION**

**Statement of the Case**

This is a Civil Rights action pursuant to **42 USC §1983**, filed by a prisoner at Orleans Correctional Facility, pro-se, seeking damages based on the use of unnecessary deadly force during Plaintiff's arrest by Defendant excessive deadly force during Plaintiff's arrest by Defendants: Deputy Mathew Carey ("Def. Carey"); Deputy Mathew Costello ("Def. Costello"); Deputy Klasen ("Def. Klasen"). The County of Onondaga ("Def. County") for the failure to properly train its officers, specifically Def. Carey, Def. Costello, and Def. Klasen. Defendant Carey, Klasen, and Costello are suit for fabricating evidence to justify the use of excessive deadly force. Def. Costello and Klasen for failure to intervene when Def. Carey shot Plaintiff.

1

# POINT I

Summary Judgment is to be granted only if the record before the Court Shows that "there is no genuine issue of any material fact and that the moving party is entitled to a judgment as a matter of law." **Rule 56 (c), Fed. R. Civ. P.** A "material" fact is one that "might affect the outcome of the suit under governing law." Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505 (1986).

Plaintiff's affidavits as well as Defendants' affidavit are squarely contradictory as to the reason deadly force was used, when it was used, and when it was used. (See Plaintiff's affidavit, ¶¶ 5-9; Def. Carey's affidavit, ¶¶ 21-22; Def. Costello's affidavit, ¶ 21; and Def. Klasen affidavit, ¶¶ 19-20.)

The Defendants, on their affidavits, stated that Plaintiff repeatedly struck the Sheriff's cruiser while knowing that the Deputies were outside of their vehicles and in close proximity to Plaintiff vehicle. (See Defendants' Affidavit.) Plaintiff, on his affidavit, attested to the fact that "I did not ram the PT Cruiser against the Deputy Sheriffs' Cruisers; neither did I place anyone's life in danger. At no time did I place the PT Cruiser in reverse. The only time that the PT Cruiser moved backwards was those times that it was rammed by the Deputy Sheriffs' Cruiser. Shooting me on the head was unnecessary used of deadly force." (See Plaintiff's affidavit, ¶ 23.) If at any time, during the incident, Plaintiff would had place the Pt Cruiser in reverse, the red light in the back of the PT Cruiser would have come on to indicate that the PT Cruiser was in reverse gear warning drives and pedestrians that the PT Cruiser was moving backwards. The red light did not come on because plaintiff never shifted gear to put the PT Cruiser in reverse. The PT Cruiser was rammed so hard by Def. Carey, and then by Def. Costello, that for a passive observer it could have look as if the Plaintiff was doing the ramming. In reality, Defendants'

ramming of Plaintiff's vehicle caused the PT Cruiser to move backwards. (See Defendants' Exhibit "A.")

Def. Carey stated on is affidavit, on paragraph 16th, that "Plaintiff immediately began ramming our patrol vehicle. He initially accelerated forward sticking Deputy Costello's and my vehicles. After Plaintiff struck our vehicles, I immediately exited my vehicle yelling 'police, stop the vehicle.' Deputy Costello, who had exited his vehicle and was standing near the passenger side of the PT Cruiser, was also yelling at the Plaintiff to stop the vehicle."

On Defendants' exhibit "A", which is a video tape of the incident from Def. Costello's vehicle, and Def. Klasen vehicle, one could clearly see that it was Plaintiff's PT Cruiser that was been ram by the Sheriffs' Cruisers, and not the other way around. The video equipment that was used in those Sheriffs Cruisers was also equipped with audio recording. As you will hear, when examining Defendants' exhibit "A", the only yelling was done after Plaintiff was shot; not before.

One could also see, on Defendant's exhibit "A," that the only time that Plaintiff's vehicle drove forward, after he stop in the middle of the interception to make a left turn, was after he was shot and his foot got stuck on the accelerator. Plaintiff foot slipped of the brake pedal from the shock of the shot on his head, which also paralyzed the Plaintiff. Plaintiff was not trying to escape; there was no place to go.

These accounts flatly contradict each other. On one hand, Def. Carey alleged that Plaintiff struck his vehicle, and rammed it so hard that his vehicle was driven into him, propelling him backwards, and injuring his shoulder. That Plaintiff had no regard for their safety or their lives. "I fired one round from my department issued weapon at the Plaintiff to stop the action." (See Def. Carey's Affidavit at Pg. #5.) On the other hand, Def. Carey shot Plaintiff

3

from inside the Sheriff's Cruiser, with the driver's side door partially open. Def. Carey stated on his affidavit, on the third paragraph, "the vehicle was revved up and fishtailing as he was accelerating again and I heard Deputy Costello tell Deputy Klasen to clear and get out of the way, which I thought he was going to shoot. The vehicle then accelerated at me again, as if he was trying to run me over and I feared for my life. At the time, I fired 1 shot from my duty weapon at the driver of the vehicle to stop the action. (See Defendants' exhibit "K," the bottom of the third paragraph.) If Def. Carey was behind the door of his cruiser, how was it that Plaintiff was trying to run Def. Carey over? Especially when Def. Carey was between his Cruiser and Def. Costello's Cruiser, which was stopped at an angle to make, sure that Plaintiff did not try to drive between the two Cruisers and get away. The video from Def. Costello's and Def. Klasen's cruiser will clarify this contradictions for the Court. (See Defendant's Exhibit "A.")

One should also consider that Def. Carey by turning off his video recorder, on and of itself, Def. Carey's action was suspect. One would think that the video recorders were placed on the Sheriff's Cruisers to record the deputy's action when confronting suspects, and be able to show that they follow the law. Plaintiff is sure that there are some rules that governs the use of the video and audio recorder by the Sheriff's Deputies, but those are the rules that were not furnished by the Defendants on their replied to Plaintiff's discovery demands. Because there is no video from the perspective of Def. Carey's cruiser, there is no way to verify his allegation that he shot Plaintiff in self-defense and the defense of his co-workers. Plaintiff knows for a fact that the video from Def. Carey's cruiser would have supported his contentions that he did not rammed the Sheriffs' cruisers. Plaintiff is concern with the fact that the video and audio of the Def. Carey, who did the shooting, conveniently disappear.

Def. Carey wrote on his affidavit, "...my vehicle was driven into me propelling me backwards on my right shoulder." (See Def. Carey's Affidavit at ¶19.) Yet, no medical evidence was produce. It is true that medical records are confidential, but one would think that Def. Carey would want to support his allegations that he was hurt. Def. Carey would only need to show the part of the medical records that deal with his alleged injuries cause as a direct result of said incident. Plaintiff knows that the reason that Def. Carey alleged that he got hurt, was simply to justify the shooting of Plaintiff with the support of his co-workers as well: Def. Costello and Def. Klasen.

To avoid departmental or criminal charges the Defendants must stick to their story even under oath when swearing to a criminal complaint or giving testimony before a Grand jury of trial. Officers know that the operation of the criminal justice system itself usually protect them from having to commit testimonial perjury before a grand Jury or trial. The majority of crimes result in pleas without the necessity of Grand Jury or trial testimony, preventing officers' concerns about the risk of detection and possible exposure to criminal charges of perjury.

The question whether the officer used excessive force in shooting Plaintiff, turns in large on which man is telling the truth. "Deadly force may not be used unless it is necessary to prevent the escape and the officer had probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others. Tennessee v. Memphis Police Department, **105 S.Ct. 1694.** In the case at bar, there was no need for the use of deadly force; the deadly force was applied maliciously and sadistically for the very purpose of causing harm. The fact that force was used when unnecessary, or in a manner excessive to any need, is in itself evidence that the defendants were acting "maliciously and sadistically to cause harm." Miller v. Leathers, **913 F. 2d 1085.**

5

A "judge's function" in evaluating a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc. **477 U.S. 242, 249, 106 S.Ct. 2505; see also** First Nat. Bank of Ariz. v. Cities Service Co., **391 U.S. 253, 289, 88 S.Ct. 1575** (the question at summary judgment is whether a jury should "resolve the parties' differing version of the truth at trial") In doing so, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the ... motion.'" Scott v. Harris, **550 U.S. 372, 127 S.Ct. 1769**

This is not a difficult case. When a police officer claims that the victim of the use of force took some act that would have justified that force, and the victim claims he did not, summary judgment is improper.

## PLAINTIFF REPLY TO DEFENDANT'S POINT III

Plaintiff will concede from the start that the Eight Amendment applies only after conviction, and that the case at bar can be properly analyzed under the fourth Amendment of the U.S. Constitution. Plaintiff assets that under the circumstances of the fact of this case, Def. Carey's shooting of Plaintiff was not objectively reasonable.

Plaintiff can and will sustain his claims against Def. Carey for unnecessarily shooting Plaintiff on top of his head which constituted excessive use of force in violation of Plaintiff constitutional rights under the fourth Amendment of the United States Constitution. Plaintiff will also sustain his claims against Def. Costello and Def. Klasen for the use of excessive force by ramming Plaintiff car in violation of Plaintiff's constitutional rights under the Fourth Amendment.

Contrary to Defendant's contentions, Plaintiff assertions that Def. Costello and Def. Klasen rammed Plaintiff's PT Cruiser, Def. Costello and the front passenger side, and Def. Klasen on the back of the PT Cruiser, is clearly shown on the video footage of the incident. Def. Carey's recorded video from his Cruiser would have shown much clearly that Plaintiff was shot unnecessarily and a clear violation of his well-established constitutional right under the Fourth Amendment of the Constitution of the United States, but, conveniently, Def. Carey turned off his video recorder before the most critical moment of Plaintiff's arrest and shooting; or did he?

It is unfortunate that the DVD provided to Plaintiff, when Defendant sent the DVD in response to Plaintiff's discovery demand , only comprised of the video recordings and no audio recording of Def. Costello's and Def. Klasen Cruisers' camera. There are no video or audio of Def. Carey's cruiser, and, interestingly, no recording number or clock to indicate the time the videos were taken. Because of the lack of recording numbers and clock, Plaintiff is not able to direct the Court to the exact section of the video, which he is referring on his contentions. Plaintiff is only able to refer the Court to "Defendant's Exhibit "A," for lack of the tools to make an accurate citing.

Plaintiff id tried to get away after committing a burglary by trying to evade arrest, not by trying to get away by ramming the Sheriff's Cruisers; but by trying to get away from encountering a sheriff deputy. Once Plaintiff stopped on the red light and saw Def. Carey's cruiser in front of his PT Cruiser, on the other side of the interception, Plaintiff knew that it was over; he was caught. Plaintiff drove slowly to the center of the interception to make a left turn when the red light changed to green. (See Defendants' Exhibit "A")

Plaintiff stopped at the center of the interception, waiting to complete the left turn, when Def. Carey rammed the PT Cruiser at the front of the passenger side. As a direct result of the

impact of Def. Carey's cruiser against Plaintiff's Pt. Cruiser was that Plaintiff's cruiser was shove backward against Def. Klasen's cruiser. In turn, Def. Klasen rammed Plaintiff's cruiser from the back, shoving Plaintiff's cruiser back forward against Def. Carey's cruiser.

Plaintiff's head whiplashed backwards and then forward. Def. Carey was able to shoot Plaintiff on the top and back of Plaintiff's head from inside his vehicle, only when Plaintiff head was all the way forward or Plaintiff would have been shot on his forehead. (See Defendants' Exhibit "A.")

Terry v. Ohio, **392 U.S. 1**, is not applicable to this particular case. This is not a "this is not a push and shove" case. Def. Carey tried to kill Plaintiff when his shot Plaintiff on top of his head, when Plaintiff's vehicle was already boxed in. Plaintiff was not going anywhere. Was neither Plaintiff nor his codefendant carrying any weapons, nor a burglary a reason to shot to kill. It is very clear when someone takes a shot at a person from a short distance with a gun, that person means to kill that other person. When you take these facts in consideration, Def. Carey's shooting of Plaintiff was unreasonable.

The question before this Court is whether the facts, taken in the light most favorable to the Plaintiff, entitled Defendants to judgment in Plaintiff's excessive force claim. Saucier v. Katz, 121 S.Ct. 2151; Graham v. Connor, 109 S.Ct. 1865. It is important to draw inferences in favor of the Summary Judgment nonmovant, even when a court decides only the clearly-established prong of the qualified-immunity standard. **Fed.R.Civ.Proc., Rule 56, 28 U.S.C.**, Tolan v. Cotton, **134 S.Ct. 1861 (2014).**

Because this case turn in large part on what Plaintiff did just before he was shot, the parties' competing accounts of the event preclude the entry of summary judgment for the Defendants.

## PLAINTIFF REPLY TO
## DEFENDANTS POINT IV

"Once qualified immunity is pleaded plaintiff's complaint will be dismissed unless defendant's alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known'" William v. Smith, **781 F.2d 319, 322 (2d Cir. 1986) (Quoting** Harlow v. Fitzgerald, **457 U.S. 800, 815 (1982).** In determining whether a particular right was clearly established, courts in this circuit consider three factors:

> (1) whether the right in question was defined with 'reasonable specificity': (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

Jermosen v. Smith, **945 F2d 547, 550 (2d Cir. 1992)(Citation omitted). Cert denied. 503 U.S. 962 (1992).**

Plaintiff submitted this complaint of excessive force by the Defendants during the process of arresting Plaintiff, because it is well established that shooting an alleged perpetrator on the head who is not a threat, not only is it in violation of Plaintiff's Fourth Amendment of the United States Constitution, but is also against the law.

Whether Defendants were plainly incompetent, or simply sadistic and evil, is up to the jury to determine. The fact is that an objective examination of the record on this case held by the court, specifically the video of the excessive use of force from Def. Costello and Def. Klasen's cruise, the court will come to the conclusion that qualify immunity does not apply in this case. Def. Carey's use of deadly force was not justified when one considers, after

examining the record that Defendant's life was not in danger and neither the life of any of the other Deputies who were present. Therefore, the shooting of Plaintiff was not justified.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully request that the court deny the motion for summary judgment, together with such other and further relief as the Court deems just and proper.

Dated: August 17, 2018.

Mr. Donald R. Martin, 15 R 3323
Plaintiff, pro-se
Orleans Correctional Facility
3531 Gains Basin Road
Albion, New York  14411-9199