**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

DONALD R. MARTIN,

                Plaintiff,

    v.                                              5:17-cv-756
                                                        (TJM/ATB)

COUNTY OF ONONDAGA, DEPUTY
MATTHEW CAREY, DEPUTY COSTELLO,
DEPUTY KLASEN,

                Defendants.

---

**Thomas J. McAvoy, Sr. U.S.D.J.**

### DECISION & ORDER

Before the Court is Defendants' motion for summary judgment in this case involving a police shooting. See dkt. # 36. The parties have briefed the issues and the Court will consider the issues without oral argument.

**I.    BACKGROUND[1]**

This case concerns events that occurred during the early morning of December 1, 2014. On that day, Plaintiff Donald R. Martin and a companion broke the front window of a Quickway Mart located in the town of Salina, New York. Defendants' Statement of Material Facts ("Defendants' Statement"), dkt. # 36-22, at ¶ 6. The two entered the

---

[1]Defendants filed the Statement of Material Facts with citations to the record required by Local Rule 7.1(3) and Plaintiff filed a response. See L.R. 7.1(3). The Court will cite to the Defendants' Statement for facts which are uncontested and note the extent and source of Plaintiff's disagreement.

1

building, filling trash bags with packs of cigarettes. Id. at ¶ 7. An eyewitness saw this crime occurring and called 911 to report it. Id. at ¶ 8.[2] Defendants Matthew Carey, Andrew Costello, and Daniel Klasen were at the relevant time Onondaga County Deputy Sheriffs. Id. at ¶ 4. All three responded to the 911 dispatch of a burglary in progress in marked Onondaga County patrol vehicles. Id. at ¶ 9.

As the three deputies made their way to the crime scene, Plaintiff and his companion left the Quickway Mart, loaded the stolen items in the back of a silver PT Cruiser, pulled out of the store parking lot, and turned right onto Toas Avenue. Id. at ¶ 10. Plaintiff was driving; the eyewitness followed, advising the 911 dispatcher of the car's location. Id. at ¶ 11. The eyewitness briefly lost sight of the PT Cruiser, but caught sight of the car again when it made a left onto Boulevard Street. Id. at ¶ 12.

As Defendant Carey approached the intersection of Boulevard Street and Lemoyne Avenue, he observed a gray PT Cruiser turn left onto Boulevard Street and head towards the traffic light at the intersection across from him. Id. at ¶ 13. He did not have his emergency lights engaged. Id. at ¶ 14. Carey notified Dispatch by radio of the PT Cruiser's location and waited at the traffic light for other units to arrive. Id. at ¶ 15; see also, Affidavit of Matthew Carey, dkt. # 36-2, at ¶ 13.[3] Carey did not engage the Plaintiff,

---

[2]Plaintiff contends that he has "no firsthand knowledge of anyone who witness[ed] anything, or [who] followed the Plaintiff after he left the store[.]" Plaintiff's Response to Defendants' Statement of Material Facts ("Plaintiff's Response"), dkt. # 41-3, at ¶ 8. Defendants have provided a copy of the witness' statement, and Plaintiff does not deny the existence of the statement or the crime that the witness claims to have seen. See Exh. I to Affidavit of Mary J. Kiggins, dkt. # 36-14.

[3]Plaintiff relies on Carey's affidavit to dispute Defendants's claim that Carey had "stopped at the traffic signal." See Plaintiff's Response at ¶ 15.

2

but instead waited for other units to arrive.  Id. at ¶ 16.

Within seconds of Defendant Carey stopping, Defendant Klasen turned onto Boulevard Street, approaching Plaintiff's vehicle from the rear with the emergency lights flashing.  Id. at ¶ 17.  Defendant Costello arrived at nearly the same time.  Id. at ¶ 18.  He approached the intersection from behind Carey, facing the front of Plaintiff's vehicle with his emergency lights on.  Id.

When the traffic signal turned green, the three patrol vehicles "converged on Plaintiff's vehicle, "leaving him no route to escape."  Id. at ¶ 19.  According to the Defendants, Plaintiff "immediately drove his vehicle forward, striking Defendant Carey's and Defendant Costello's patrol vehicles."  Id. at ¶ 20.  Plaintiff disputes this, citing generally to the dash-cam videos of the incident provided by the Defendants.  Plaintiff's Response at ¶ 20.  He contends that he "was turning left when he was rammed on the front, right hand side, the passenger side of the car by Defendant Costello's patrol vehicle."  Id.  Carey's vehicle then "rammed Plaintiff's vehicle . . . on the front of the driver's side of the vehicle."  Id.  That caused Plaintiff's vehicle "to lurch backwards towards Defendant's [sic] Klasen['s] patrol car? [sic]"  Id.

The deputies exited their cars, yelling at Plaintiff, they claim, to stop his vehicle and get out of his car.  Defendants' Statement, dkt. # 21.  Plaintiff denies hearing the officers shout.  Plaintiff's Response at ¶ 21.  He contends that he hears Klasen ordered him out of the car only after he was shot.  Id.

Defendants further contend that Plaintiff, attempting to avoid arrest, ignored their commands and put his car in reverse.  Defendants' Statement at ¶ 22.  Plaintiff slammed into Klasen's car.  Id.  Plaintiff denies attempting to evade arrest and argues instead that

3

his car was pushed backwards into Klasen's car by the other deputies in their vehicles. Plaintiff's Response at ¶ 22. He insists that videos show that his reverse lights never came on. Id.

Defendants contend that Plaintiff continued to accelerate his car back and forth, striking the Defendants' vehicles. Defendants' Statement at ¶ 23. Each impact came with more force. Id. Plaintiff struck Defendant Carey's vehicle with such force that he pushed that car into Carey, injuring him. Id. at ¶ 24. All three deputies feared for their lives and the lives of the other deputies because of Plaintiff's action. Id. at ¶ 26.[4] Defendants claim that Plaintiff directed his vehicle at Carey and accelerated forward quickly. Id. at ¶ 26. Costello and Klasen believed Carey was "in imminent danger of death or serious injury." Id. They drew their weapons, intending to stop Plaintiff's threat. Id.

Carey feared for his life as Plaintiff's vehicle approached him, and he fired a round from his service revolver. Id. at ¶ 27. He struck Plaintiff in the head and incapacitated him. Id. Officers took Plaintiff and his companion into custody and transported Plaintiff to the hospital. Id. at ¶ 28.

Plaintiff offers an alternate version of the shooting. He claims that his car was moving backwards at the time Carey shot him. Plaintiff's Response at ¶ 23. He alleges that "[w]hen both Defendant Carey and Defendant Costello's patrol vehicle rammed Plaintiff's car," the car moved backwards, causing Plaintiff's head to go forward and down. Id. Carey shot Plaintiff at that moment, he claims. Id. Plaintiff alleges that "[w]hen one

---

[4] Defendants' statement has no paragraphs numbered "25" and two paragraphs numbered "26." This is the first one. The next sentence in this opinion cites to the second paragraph Defendants' labeled "26."

4

consider[s] that Defendant Carey was shooting on an upward angle from the window of his patrol car, one could see that the only way that Plaintiff could have been shot on the top and back of his head is if he had his head forward and down." Id. This occurred because being struck by the cars in front of him forced Plaintiff's body forward and his head down. Id. Plaintiff denies he ever attempted to escape. Id. at ¶ 24. He contends that the shooting occurred as he attempted to go forward through the intersection, and that he accelerated forward only after he was shot and lost control of his movements. Id. at ¶ 26. He also disputes why the officers would fear for their lives from his conduct. Id. at ¶ 27.

In the aftermath of the incident, Plaintiff faced charges of burglary in the second degree, criminal mischief in the third degree, criminal possession of stolen property in the third degree, grand larceny in the third degree, resisting arrest, and attempted assault in the first degree. Defendants' Statement at ¶ 30. A Sheriff's Office review of the incident found Carey's use of force in shooting Plaintiff reasonable. Id. at ¶ 31. An Onondaga County Grand Jury reviewed the incident and declined to charge Carey. Id. at ¶ 32. Plaintiff pled guilty to assault in the second degree in the Onondaga County Court. Id. at ¶ 33. He admitted that "he acted with intent to prevent a police officer from performing a lawful duty and caused physical injury to Deputy Carey." Id. Plaintiff also pled guilty to other charges, including burglary in the second degree and reckless endangerment in the second degree. Id. at ¶ 34. He admitted that, while fleeing from the scene of the burglary, "he used a dangerous instrument consisting of a vehicle." Id. at ¶ 34.

Plaintiff admits that he pled guilty to the above charges. Plaintiff's Response at ¶¶ 33-34. He contends, however, that his guilty plea came because "the plea deal was a package. Plaintiff could either plead guilty to the charges as they were written, or he

5

would have been expose[d] to a sentence starting at 15 year to 25 years or more in prison" if he went to trial. Id. at ¶ 24. Since Plaintiff was guilty of the theft charges, a jury would have also found him guilty of the other charges. Id. Plaintiff followed his counsel's instructions to plead guilty "because he did not want to do . . . that time." Id. Still, he claims, he was not guilty: "[e]verything happen[ed] so fast, seven second[s] from the time Plaintiff moved forward on the green light, to the time he was shot on top and back of his head, that there was no time to plot any kind of escape attempt." Id.

Plaintiff, proceeding *pro se*, filed his Complaint on July 12, 2017. See dkt. # 1. He alleged that the County of Onondaga had failed to train its officers about proper use of deadly force. He also alleged that Defendant Carey violated his Fourth and Eighth Amendment rights by using excessive force in shooting him. Plaintiff also contended that Deputies Costello and Klasen violated his Fourth and Eighth Amendment rights by ramming his car and endangering him. Plaintiff also alleged that the Defendants falsified the incident reports.

After being served with the Complaint and undertaking discovery, Defendants filed the instant motion. The parties briefed the issues, bringing the case to its present posture.

## II. LEGAL STANDARD

It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). An issue is genuine if the relevant

6

evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant is able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).

## III. ANALYSIS

Defendants offer several grounds for summary judgment. The Court will discuss Defendants' arguments in turn, as appropriate.

### A. Excessive Force Claim

Plaintiff claims that Defendants used excessive force in taking him into custody in violation of the Fourth Amendment to the United States Constitution. He alleges that Defendant Carey used excessive force in shooting him and that Defendants Costello and Klasen used excessive force in "ramming" their vehicles into his to stop his escape.

Excessive force claims brought pursuant to the Fourth Amendment "'are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard.'" Shamir v. City of New York, 804 F.3d 553, 556 (2d Cir. 2015) (quoting Graham v. Connor, 490 U.S. 386, 388 (1989)). Using "excessive force renders a seizure of the person unreasonable and for that reason violates the Fourth Amendment." Id. To decide whether the force was reasonable, a court should pay "'careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the subject poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" Soares v. Connecticut, 8 F.3d 917, 921 (2d Cir. 1993) (quoting Graham, 490 U.S. at 396). This standard focuses on "'a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" Brown v. City of New York, 798 F.3d 94, 100 (2d Cir. 2015) (quoting Graham, 490 U.S. at 397). "A court's role in considering excessive force claims is to determine whether a jury, instructed as to the relevant factors, could reasonably find that the force used was excessive." Id. at 103.

Defendants argue that video recordings of the incident completely contradict Plaintiff's claims. Those videos, they insist, demonstrate that Plaintiff repeatedly drove his car back and forth after officers boxed him in, striking the officers' vehicles and endangering him. Plaintiff offers another version of events, arguing that he was struck from behind, pushed forward towards Officer Carey, who immediately shot him. Plaintiff's version of events, Defendants claim, is contradicted both by the video and by the testimony of an eyewitness, the person who initially called 911 to report the burglary and who followed officers to the scene. They also offer the affidavit of the witness who made the initial 911 call that drew them to the scene. See Exhibit I to Affidavit of Mary J.

8

Kiggins, dkt. # 36-14. This witness made the call when he saw the burglary occurring and then followed Plaintiff's car to the scene of the shooting. The videos and affidavit, Defendants argue, only support their version of events and present proof so overwhelming that no reasonable juror could find for the Plaintiff.

The Court has reviewed carefully the videos of the incident provided by the Defendants. See Exh. A to Affidavit of Mary J. Kiggins, dkt. # 36-6. Those videos demonstrate that when Plaintiff's vehicle arrived at an intersection, two police vehicles arrived at nearly the same time, facing him. Id. Plaintiff attempted to turn left, and the two police cars moved toward him and stopped, blocking his forward progress. Id. At the same time, a third police vehicle approached Plaintiff's car from behind, blocking him from moving in reverse. Id. Plaintiff then accelerated forward, smashing into one of the police cars facing him. Id. He backed up, striking the vehicle behind him. Id. Plaintiff repeated this procedure at least twice, doing damage to his vehicle and the three police cars. Id. Two officers got out of their cars, guns drawn, and approached the side of Plaintiff's vehicle. Id. Plaintiff again sped forward, at which time Defendant Carey apparently shot him, which eventually caused the vehicle to stop. Id. This video supports the affidavits of the three Defendants and the witness.

Beyond disputing the Defendants' statements as explained above, Plaintiff offers an affidavit in opposition to the motion for summary judgment. See dkt. # 41-2. Plaintiff contends that, as he attempted to turn left at the intersection of Boulevard and Lemoyne, Carey "shot forward with his lights off, and rammed his Cruiser on the front of the driver's side of the car pushing the car back about six feet." Id. at ¶ 5. Klasen "rammed the PT Cruiser from the back, while" Costello maneuvered around Carey's car and "ram[med] my

9

PT Cruiser from the passenger side on an angle." Id. This impact from the police vehicles caused Plaintiff's head to "sho[o]t forward," and when Plaintiff's head reached "its lowest point," Carey shot him in the head." Id. at ¶ 6. Plaintiff never ran into any cars, and he had no time to do so. Id. Paralyzed by the shot to his head, Plaintiff's foot slipped off the brake and ended up on the gas pedal, flooring it. Id. at ¶ 7. He heard no yelling or screaming before the shooting. Id. Plaintiff claims that he never tried to drive away, never used the car as a weapon, and never ran into the deputies' cars. Id. at ¶ 14.

"'Fourth Amendment jurisprudence has long recognized the right to make an arrest or investigatory stop necessarily carries with it the right to use some *degree* of physical coercion or threat thereof to effect it.'" Soto v. Gaudett, 862 F.3d 148, 158 (2d Cir. 2017) (quoting Graham, 490 U.S. at 396). Still, a Fourth Amendment violation occurs when officers use more force than was "'objectively reasonable' in light of the facts and circumstances confronting them.'" Id. (quoting Graham, 490 U.S. at 397). This standard requires the Court to apply a number of factors, "including the *severity of the crime at issue*, whether the suspect poses an *immediate threat* to the safety of the officers or others, and whether he is *actively* resisting arrest or *attempting to evade arrest by flight*." Id. (quoting Graham, 490 U.S. at 396) (emphasis in original).

The Court finds that a question of fact exists as to whether Carey's use of force was objectively reasonable in light of all the circumstances. While the videos seem to support the affidavits the Defendants provide, Plaintiff disputes the veracity of those affidavits, and nothing in the videos provides a definitive answer as to when Carey shot Plaintiff, or what sort of threat that he faced at the time of the shooting. A jury is required to determine the

10

circumstances of the shooting and whether the Carey's decision to shoot was objectively reasonable under the circumstances.

Similarly, a question of fact exists as to what force the other Defendants used to stop and trap Plaintiff's car, and whether that force was reasonable under the circumstances. A question of fact also exists as to any injuries that the alleged use of force may have caused Plaintiff. While the evidence for Defendants' version of events is strong, enough questions about the facts and circumstances surrounding Defendants' actions exist that the Court must deny the Defendants' motion in this respect.

### B. Qualified Immunity

Defendants argue that they are entitled to qualified immunity for any claims related to Plaintiff's injuries from the conflict in question. "Qualified immunity is an affirmative defense that shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Stephenson v. Doe, 332 F.3d 68, 76 (2d Cir. 2003) (quoting McCardle v. Haddad, 131 F.3d 43, 50 (2d Cir. 1997)). Qualified immunity applies when "'it was 'objectively reasonable' for [the officer] to believe that [his or her] actions were lawful at the time of the challenged act.'" Betts v. Shearman, 751 F.3d 78, 83 (2d Cir. 2014) (quoting Jenkins v. City of New York, 478 F.3d 76, 87 (2d Cir. 2007)). "Official conduct violates clearly established law 'when, at the time of the challenged conduct, 'the contours of a right are sufficiently clear' that every 'reasonable official would have understood that what he is doing violates the right.'" Terebsi v. Torreso, 764 F.3d 217, 230 (2d Cir. 2014) (quoting Ashcroft v. al-Kidd, 131 S.Ct. 2074, 2083 (2011)). "The purpose of the doctrine is to ensure that the official being sued had 'fair warning' that his

11

or her actions were unlawful." Id. (quoting Hope v. Pelzer, 536 U.S. 739-40 (2002)). The plaintiff is not required to "show a case 'directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.'" Id. (quoting al-Kidd, 131 S. Ct. at 2083).

Here, Carey used deadly force against the Plaintiff. "Under the Fourth Amendment, which governs the use of force in connection with an arrest, law enforcement officers may use only such force as is objectively reasonable under the circumstances." O'Bert v. Vargo, 331 F.3d 29, 36 (2d Cir. 2003). This calculation considers the events of the moment: "'police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation.'' Id. (quoting Graham v. Connor, 490 U.s. 386, 396-97 (1989)). "It is not objectively reasonable for an officer to use deadly force to apprehend a suspect unless the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." Id.

As explained above, facts exist by which a reasonable juror could conclude that Carey used deadly force under circumstances where a reasonable officer would not have probable cause to believe that Plaintiff posed a significant threat of serious physical injury to the officer or others. Plaintiff alleges that Carey shot him almost immediately after he confronted Plaintiff, and that Plaintiff did nothing to move his car towards the Deputy. If a jury accepts these facts, qualified immunity would not apply. Similarly, though the officers did not necessarily use deadly force in "ramming" their cars into Plaintiff's, use of such force would not be objectively reasonable under circumstances where, according to Plaintiff, he made no attempt to speed away or resist arrest. As such, the Court will deny

12

Defendants' motion in this respect as well.  The motion is denied without prejudice to renewal at an appropriate time during trial.

### C. Claims Against Onondaga County

Defendants also argue that any claims against Onondaga County must be dismissed.  They contend that Plaintiff has not pointed to any evidence which demonstrates a failure to train on the part of the County, and that this lack of evidence requires the Court to grant their motion.  Plaintiff does not respond to this portion of the motion.

As a general matter, municipal liability is limited under Section 1983 by Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).  In that case, the Supreme Court found that municipal liability exists "where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006).  To prevail, a plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."  Bd. of County Commr's v. Brown, 520 U.S. 397, 403 (1997).  "A government's official policy may be 'made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" Dangler v. New York City Off Track Betting Corp., 193 F.3d 130, 142 (2d Cir. 1999) (quoting Monell, 436 U.S. at 694).

In addition, "[m]unicipal liability may . . . be premised on a failure to train employees when inadequate training 'reflects deliberate indifference to . . . constitutional rights.'" Okin v. Vill. of Cornwall-on-Hudson Police Dep't, 577 F.3d 415, 440 (2d Cir. 2009) (quoting City of Canton v. Harris, 489 U.S. 378, 392 (1989)).  To demonstrate such deliberate indifference, the plaintiff must demonstrate "(1) 'that a policymaker knows to a moral

13

certainty that her employees will confront a given situation'; (2) 'that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation'; (3) 'that the wrong choice by the . . . employee will frequently cause the deprivation of a citizen's constitutional rights.'" Id. (quoting Walking v. City of New York, 974 F.2d 298, 297-98 (2d Cir. 1992)). "'[D]eliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents.'" Id. (quoting Vann v. City of New York, 72 F.3d 1040,1049 (2d Cir. 1995)).

The Court will grant the motion in this respect. Plaintiff does not even attempt to point to evidence which indicates that his injuries came as a result of a municipal policy or custom. He also fails to point to any training that the deputies lacked. As such, nothing in the record indicates that municipal liability could apply in this case. The Court will grant the Defendants' motion in that respect.

### D.     Eighth and Fourteenth Amendment Claims

Defendants contend that the Court should dismiss any claims Plaintiff brings pursuant to the Eighth Amendment and Fourteenth Amendment claims. Plaintiff was a pre-trial detainee, and the Eighth Amendment's prohibition on cruel and unusual punishment does not apply to such persons. The Fourteenth Amendment's Substantive Due Process clause does not apply, Defendants claim, because the Fourth Amendment, a more specific version of the same rights, applies. Plaintiff agrees that he cannot bring any Fourth or Eighth Amendment claims. The Court agrees that the proper lens through which

14

to view this case is the Fourth Amendment, and will therefor grant the motion in this respect as well.

## IV.     CONCLUSION

For the reasons stated above, the Defendants' motion for summary judgment, dkt. # 36, is hereby GRANTED in part and DENIED in part. The motion is GRANTED with respect to Plaintiff's claims against the County of Onondaga. The Clerk of Court is directed to TERMINATE the County from this litigation. The motion is also granted with respect to Plaintiff's Eighth Amendment and Fourteenth Amendment substantive due process claims. The motion is DENIED in all other respects. Trial will be scheduled on Plaintiff's excessive force claims against the individual Defendants.

**IT IS SO ORDERED**

Dated: March 8, 2019

_Thomas J. McAvoy_
Thomas J. McAvoy
Senior, U.S. District Judge